**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Dudley N. Carpenter and Jane G. Carpenter,
Respondents/Appellants,

v.

Charles L. Measter and Barbara P. Measter,
Appellants/Respondents.

Appellate Case No. 2011-192366

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

Unpublished Opinion No. 2013-UP-066
Heard December 12, 2012 – Filed February 6, 2013

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

D. Ryan McCabe and Brian C. Gambrell, of Rogers, Townsend & Thomas, PC, of Columbia, for Appellants/Respondents.

Thomas C. Hildebrand, Jr., of Haynsworth Sinkler Boyd, P.A., of Charleston, for Respondents/Appellants.

**PER CURIAM:** This case involves a contract to sell a condominium unit in Bohicket Marina Village, a horizontal property regime on Seabrook Island. Appellants/Respondents, Charles and Barbara Measter (Sellers), seek review of the circuit court's failure to grant a directed verdict or judgment notwithstanding the verdict (JNOV) on the breach of contract claim filed by Respondents/Appellants, Dudley and Jane Carpenter (Purchasers). In their cross-appeal, Purchasers challenge the circuit court's granting of Sellers' motion for a directed verdict on Purchasers' claim for violation of the Residential Property Condition Disclosure Act (Disclosure Act), S.C. Code Ann. § 27-50-10 to -270 (2007 & Supp. 2012). We affirm in part, reverse in part, and remand.

1. Initially, we reject Sellers' argument that the circuit court lacked jurisdiction to issue its order dated February 23, 2010 (Sellers' Issue 1). Sellers challenge this order as an untimely revision of the circuit court's previous decision granting partial summary judgment to Sellers. They argue that Purchasers' voluntary dismissal of their claim for violation of the Unfair Trade Practices Act ended the period provided by Rule 54(b), SCRCP, for revision of the previous decision. Rule 54(b), SCRCP, provides that an order or other form of decision adjudicating fewer than all the claims and omitting an express determination that there is "no just reason for delay," is subject to revision at any time before "the entry of judgment adjudicating all the claims . . . ."

Here, Circuit Court Judge Markley Dennis, Jr., issued a Form 4 judgment dated September 3, 2009, that granted Sellers' motion for summary judgment as to Purchasers' claims for fraud and negligent misrepresentation. The judgment expressly denied the motion as to Purchasers' claim for violation of the Unfair Trade Practices Act but remained silent as to Purchasers' remaining claims for breach of contract, breach of contract accompanied by a fraudulent act, and violation of the Disclosure Act. Judge Dennis's February 23, 2010 order clarified his intent, as it existed on September 3, 2009, to deny Sellers' summary judgment motion as to these remaining three claims. The February 23, 2010 order explained that (1) Judge Dennis's September 3, 2009 ruling was based on the economic loss rule; (2) as a result, he intended to grant summary judgment as to Purchasers' tort claims; and (3) he intended to deny summary judgment as to Purchasers' contract-based claims and statutory claims.

Because the February 23, 2010 order did not take any new action but merely placed in the record evidence of Judge Dennis's intent as it existed on September 3, 2009, Judge Dennis properly directed that the February 23, 2010 order was to take

effect "*nunc pro tunc*." *See Ex parte Strom*, 343 S.C. 257, 264, 539 S.E.2d 699, 702-03 (2000) ("*Nunc pro tunc* orders can only be used to place in the record evidence of judicial action that has actually taken place. A prerequisite for a *nunc pro tunc* order . . . is some previous action by the court that is not adequately reflected in its record." (citation omitted)); *see also Black's Law Dictionary* 1174 (9th ed. 2009) (explaining that "*nunc pro tunc*" is Latin for "now for then" and that the phrase means having retroactive legal effect through a court's inherent power); *id.* ("When an order is signed 'nunc pro tunc' as of a specified date, it means that a thing is now done which should have been done on the specified date." (quoting 35A C.J.S. *Federal Civil Procedure* § 370 (1960))).

The *nunc pro tunc* effect of the February 23, 2010 order was actually contemplated by a previous Form 4 judgment dated November 4, 2009, and signed by Circuit Court Judge Deadra Jefferson. Sellers contend that this judgment was a "judgment adjudicating all the claims" for purposes of Rule 54(b). However, this judgment indicated that although Purchasers were voluntarily dismissing their claim for violation of the Unfair Trade Practices Act, they were going to file a motion seeking clarification of Judge Dennis's September 3, 2009 judgment.[1] While Judge Jefferson checked the boxes next to the words "ACTION DISMISSED" and "Rule 41(a), SCRCP," she expressly conditioned such a dismissal on Judge Dennis's contemplated ruling on Purchasers' motion to clarify:

> [I]n the interests of justice and *for clarity of the record* for appellate purposes [Purchasers] will file a Motion to Clarify Judge Dennis'[s] order. After Judge Dennis's consideration of the motion if there is remaining any cause of action the matter *will be restored to the jury trial roster* for trial and *if* none remains the matter *will be* ended with prejudice so that the parties may avail themselves of the appellate process.

(emphasis added). Hence, Judge Jefferson's Form 4 judgment was conditional and did not qualify as a "judgment adjudicating all the claims" for purposes of Rule 54(b). Therefore, Judge Dennis had jurisdiction to issue his order dated February 23, 2010, and he properly gave the order retroactive effect.

---

[1] Notably, Purchasers agreed to file this motion at the urging of Judge Jefferson.

2.  As to Purchasers' breach of contract claim (Sellers' Issues 2 and 4), the circuit court properly declined to rule as a matter of law that there existed no breach of contract. *See Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006) (holding that in ruling on a motion for a directed verdict, the trial court must view the evidence and the inferences reasonably drawn therefrom in the light most favorable to the party opposing the motion); *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006) (holding that the trial court should deny a directed verdict motion when either the evidence yields more than one inference or its inference is in doubt).  There is ample evidence of Sellers' breach of the contract's implied covenant that the parties must act in good faith and deal fairly with each other. *See Williams v. Riedman*, 339 S.C. 251, 267, 529 S.E.2d 28, 36 (Ct. App. 2000) ("[T]here exists in every contract an implied covenant of good faith and fair dealing." (citation omitted)).  We note that Purchasers did not attempt to assert the covenant of good faith and fair dealing as an independent cause of action, as argued by Sellers. *See RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 473, 597 S.E.2d 881, 884 (Ct. App. 2004) (holding that the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract).  Rather, Purchasers asserted a cause of action for breach of contract, and Sellers' liability may be based on a breach of any of the contract's terms, including the implied covenant of good faith, as long as the breach caused damage to Purchasers. *See Williams*, 339 S.C. at 274, 529 S.E.2d at 40 ("[T]he implied covenant of good faith and fair dealing has been viewed as *another contract term*." (emphasis added)).

In the light most favorable to Purchasers, the evidence shows that Sellers knew of the structural problems with the regime's buildings and the resulting class action litigation that ultimately yielded funds with which to reimburse unit owners for repairs.  Further, in the light most favorable to Purchasers, Sellers' admitted consultations with multiple attorneys as to whether they had a duty to disclose this information to Purchasers demonstrates Sellers' awareness that the buildings' structural problems and impending repairs directly affected the unit they were selling to Purchasers.  Therefore, we affirm the circuit court's denial of Sellers' motions for a directed verdict and JNOV on the breach of contract claim. *See Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999) (holding that an appellate court will only reverse the trial court's ruling when no evidence supports the ruling or when the ruling is controlled by an error of law).  Likewise, to the extent that Sellers adequately objected and assigned error to the jury instruction on the implied covenant of good faith, we

affirm the instruction. *See Keaton ex rel. Foster v. Greenville Hosp. Sys.*, 334 S.C. 488, 495-96, 514 S.E.2d 570, 574 (1999) (holding that a jury charge that is substantially correct and covers the law does not require reversal).

3.  As to Sellers' argument that the contract's disclaimer and other provisions required dismissal of the breach of contract claim (Sellers' Issue 3), the remedy they seek is reversal of the circuit court's "rulings that did not dismiss [Purchasers'] breach of contract claims as a matter of law."  However, the record does not show that Sellers raised these precise issues in their directed verdict motion because Sellers did not include in the record a copy of their pre-trial brief, on which they relied in seeking a directed verdict.  Further, the circuit court did not address these precise issues in denying the directed verdict motion as to the breach of contract claim.  Therefore, these issues are not preserved for review. *See* Rule 210(h), SCACR (stating that the appellate court will not consider any fact which does not appear in the Record on Appeal); *In re McCracken*, 346 S.C. 87, 93, 551 S.E.2d 235, 238 (2001) (holding that a JNOV motion was not preserved because no grounds were raised in the requisite directed verdict motion); *Zaman v. S.C. Bd. of Med. Exam'rs*, 305 S.C. 281, 285, 408 S.E.2d 213, 215 (1991) (holding that the record must show the issue was raised in the trial court); *Germain v. Nichol*, 278 S.C. 508, 509, 299 S.E.2d 335, 335 (1983) ("Appellant has the burden of providing this Court with a sufficient record upon which this Court can make its decision."); *Weston v. Kim's Dollar Store*, 385 S.C. 520, 538, 684 S.E.2d 769, 779 (Ct. App. 2009), *aff'd and remanded*, 399 S.C. 303, 731 S.E.2d 864 (2012) (declining to address an argument because the court was unable to discern whether the appellant raised to the circuit court the issues on appeal; appellant's motion seeking amendment of the circuit court's order did not appear in the record); *State v. Kennerly*, 331 S.C. 442, 455, 503 S.E.2d 214, 221 (Ct. App. 1998), *aff'd*, 337 S.C. 617, 524 S.E.2d 837 (1999) ("In reviewing a denial of directed verdict, issues not raised to the trial court in support of the directed verdict motion are not preserved for appellate review.").

4. As to Sellers' challenge to the jury's damages award (Sellers' Issue 5), the record does not reflect Sellers' presentation of this issue to the circuit court after the jury returned the verdict.  Therefore, the issue is not preserved for our review. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." (citation omitted)).

5.  As to Sellers' merger argument (Sellers' Issue 6), the record does not show that Sellers raised this issue in their directed verdict motion because Sellers did not include in the record a copy of their pre-trial brief, on which they relied in seeking a directed verdict.  Further, the circuit court did not address this issue in denying the directed verdict motion as to the breach of contract claim.  Therefore, this issue is not preserved for review. *See* Rule 210(h), SCACR (stating that the appellate court will not consider any fact which does not appear in the Record on Appeal); *Zaman v. S.C. Bd. of Med. Exam'rs*, 305 S.C. 281, 285, 408 S.E.2d 213, 215 (1991) (holding that the record must show the issue was raised in the trial court); *Germain v. Nichol*, 278 S.C. 508, 509, 299 S.E.2d 335, 335 (1983) ("Appellant has the burden of providing this Court with a sufficient record upon which this Court can make its decision."); *Weston v. Kim's Dollar Store*, 385 S.C. 520, 538, 684 S.E.2d 769, 779 (Ct. App. 2009), *aff'd and remanded*, 399 S.C. 303, 731 S.E.2d 864 (2012) (declining to address an argument because the court was unable to discern whether the appellant raised to the circuit court the issues on appeal; appellant's motion seeking amendment of the circuit court's order did not appear in the record); *State v. Kennerly*, 331 S.C. 442, 455, 503 S.E.2d 214, 221 (Ct. App. 1998), *aff'd*, 337 S.C. 617, 524 S.E.2d 837 (1999) ("In reviewing a denial of directed verdict, issues not raised to the trial court in support of the directed verdict motion are not preserved for appellate review.").

6.  As to the trial court's failure to provide Sellers with a copy of Purchasers' pre-trial brief, Sellers did not set forth this assignment of error in their Statement of Issues on Appeal.  Therefore, we need not consider it. *See* Rule 208(b)(1)(B) ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").  In any event, the precise arguments set forth in Sellers' appellate brief to support this assignment of error were not presented to the trial court.  Rather, Sellers' counsel acquiesced in the trial court's ruling on his request to order Purchasers to provide him with a copy of the brief.  Therefore, Sellers' arguments on appeal of this ruling are not preserved for review. *See First Carolina*, 372 S.C. at 301, 641 S.E.2d at 907 ("[I]t is a litigant's duty to bring to the court's attention any perceived error, and the failure to do so amounts to a waiver of the alleged error."); *id.* ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." (citation omitted)); *cf. State v. Mitchell*, 330 S.C. 189, 195, 498 S.E.2d 642, 645 (1998) (holding that because counsel acquiesced in the trial court's ruling regarding his request for the solicitor's entire file on an eyewitness and made no other objections regarding wanting the criminal files, appellant was barred from raising the issue on appeal); *Hollins v. Wal-Mart Stores,*

*Inc.*, 381 S.C. 245, 251, 672 S.E.2d 805, 808 (Ct. App. 2008) (holding that because a party acquiesced in the trial court's denial of additional voir dire, she failed to preserve the issue for appellate review).

7.  As to Purchasers' claim for violation of the Disclosure Act (Purchasers' Issue 1), we agree with Purchasers that the circuit court erred in granting Sellers' directed verdict motion and in denying Purchasers' directed verdict motion.  Under the Disclosure Act, an "owner" who "discloses any material information on the disclosure statement that he knows to be false, incomplete, or misleading is liable for actual damages proximately caused to the purchaser and court costs." S.C. Code Ann. § 27-50-65 (2007).  The Act defines "owner" as "each person having a recorded present or future interest in real estate who is identified in a real estate contract subject to this article . . . ." S.C. Code Ann. § 27-50-10(4) (2007).  Section 27-50-10(4) further states "This disclosure is limited to the actual residential dwelling and does not address common elements or areas for which the owner has no direct and primary responsibility."  It is this "common elements exception" to the Disclosure Act on which the circuit court based its directed verdict ruling in the present case.

Sellers urge the court to consider the definition of "General Common Elements" set forth in the Horizontal Property Act, S.C. Code Ann. § 27-31-10 to -440 (2007 & Supp. 2012), for purposes of interpreting the common elements exception to the Disclosure Act.  This definition is set forth in section 27-31-20(f) and includes the foundations and main walls.  They also urge the court to consider the definition of "Apartments" in the regime's amended Master Deed, which designates the horizontal boundaries of each apartment unit as the "unfinished inner surfaces of the ceilings and floors."  These definitions likely influenced the circuit court's ruling.  However, to the extent that the foundations, floors, main walls, and ceilings are inextricably intertwined to a condominium unit such that they directly affect the unit's intended use and value, the legislature could not have possibly intended to include them in the common elements exception to the Disclosure Act. *See Unisun Ins. Co. v. Schmidt*, 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000) (holding that courts will reject a statutory interpretation that would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention).

Here, the structural problems with the regime's buildings directly affected the unit sold to Purchasers and required remediation construction that involved damaging the unit's flooring and displacing Purchasers from the unit for several months.

Further, there was evidence that these structural problems caused sagging floors in the unit. Moreover, the class action litigation concerning these structural problems resulted in the imposition of a special assessment on each unit for building repairs; each unit owner's share of the proceeds from the class action litigation was intended to compensate the owner for his or her share of repair costs exacted by the special assessment.[2] There was evidence from which one could reasonably infer that by the time of closing on the sale of the unit, Sellers were aware of this impending special assessment.

Notably, had Purchasers not timely paid the special assessment, their title to the unit would have been encumbered. *See Harbison Cmty. Ass'n, Inc. v. Mueller*, 319 S.C. 99, 102, 459 S.E.2d 860, 862 (Ct. App. 1995) ("Covenants requiring property owners to pay fees for improvements, maintenance or other services to a homeowners association run with the land." (citation omitted)). Consistent with our opinion in *Mueller*, section 9.04 of the By-Laws of the regime's council of co-owners states that all assessments "chargeable to any Apartment [that] are unpaid after becoming due . . . shall constitute a lien against such Apartment . . . ." This invokes item 20 of Sellers' Disclosure Statement, which includes an inquiry into Sellers' knowledge of any "[l]awsuits, foreclosures, bankruptcy, tenancies, judgments, tax or other liens, *proposed assessments* or notice from any governmental agency that could affect title to the property[,]" as well as item 21, which includes an inquiry into "[o]wners' association fees or 'common area' expenses or assessments." (emphasis added).

Although Sellers checked "Yes" next to item 21 to acknowledge routine regime assessments, they did not notify Purchasers of the council's announced repair plans, which necessarily generated the subsequent special assessment. The note "Check with seller before submitting offer" located at the bottom of the Disclosure Statement, without more, does not constitute an adequate disclosure, and the record does not show that Purchasers were provided with copies of minutes of past meetings of the council prior to or at closing.

---

[2] Sellers' argument that the class action litigation was a matter of public record that Purchasers should have discovered is unavailing. The Disclosure Act requires disclosure of several matters of public record. *See* S.C. Code Ann. § 27-50-40(A)(5) (2007) (requiring disclosure of "the zoning laws, restrictive covenants, building codes, and other land-use restrictions affecting the real property, any encroachment of the real property from or to adjacent real property, and notice from a governmental agency affecting this real property").

The record unequivocally reflects the Sellers' awareness of the class action litigation, the allegations of the class action complaint, and the status of the litigation when they entered into the contract of sale with Purchasers.  Under even a liberal construction of these undisputed facts in favor of Sellers, we see no reasonable possibility of a verdict for Sellers on Purchasers' claim for violation of the Disclosure Act. *See Proctor v. Dep't of Health & Envtl. Control*, 368 S.C. 279, 292-93, 628 S.E.2d 496, 503 (Ct. App. 2006) ("In essence, the court must determine whether a verdict for the opposing party 'would be reasonably possible under the facts as liberally construed in his favor.'").  The circuit court's directed verdict for Sellers was not only unsupported by the evidence but also controlled by a mistaken interpretation of the Disclosure Act.  Therefore, we reverse this directed verdict as well as the circuit court's denial of Purchasers' directed verdict motion on this claim. *See Steinke*, 336 S.C. at 386, 520 S.E.2d at 148 (holding that an appellate court will only reverse the trial court's ruling when no evidence supports the ruling or when the ruling is controlled by an error of law).  We remand for the entry of a directed verdict for Purchasers on this claim as well as a determination of attorney's fees pursuant to S.C. Code Ann. § 27-50-65 (2007).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**HUFF, THOMAS, and GEATHERS, JJ., concur.**