**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Eastwood Construction Partners, LLC and Eastwood Development Corporation, Appellants,

v.

GHD Brooks Creek, a North Carolina Limited Liability Company, and AF-Brooks Creek, LLC, a North Carolina Limited Liability Company, GHD River Falls, a North Carolina Limited Liability Company, and AF-River Falls, LLC, a North Carolina Limited Liability Company, Greenhawk Corporation, Inc., and TRI Pointe Homes, Inc., Respondents.

Appellate Case No. 2022-000290

———————

Appeal From York County
Daniel Dewitt Hall, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-281
Heard April 2, 2024 – Filed July 31, 2024

———————

**AFFIRMED**

———————

James Edward Bradley, of Moore Bradley Myers, PA, of West Columbia; Allen M. Nason, of Lake Wylie; and James C. Adams, II, of Greensboro, North Carolina; all for Appellants.

Stephen M. Cox, of Robinson Bradshaw & Hinson, PA, of Rock Hill; and Amanda Pickens Nitto, of Robinson Bradshaw & Hinson, PA, of Charlotte, North Carolina; both for Respondent TRI Pointe Homes, Inc.

Andrew A. Mathias and Konstantine Peter Diamaduros, both of Maynard Nexsen, of Greenville; and John I. Mabe, of Maynard Nexsen, of Raleigh, North Carolina; all for Respondents GHD Brooks Creek, AF- Brooks Creek, LLC, GHD River Falls, AF- River Falls, LLC, and Greenhawk Corporation, Inc.

---

**PER CURIAM:** Eastwood Construction Partners, LLC, and Eastwood Development Corporation (collectively, Eastwood) appeal the circuit court's orders granting partial summary judgment to Greenhawk Corporation, Inc., its subsidiaries GHD Brooks Creek, AF-Brooks Creek, LLC, GHD River Falls, and AF-River Falls (collectively, Greenhawk) and TRI Point Homes, Inc. (all together, Respondents) in which the circuit court found Eastwood did not have an enforceable contract with Greenhawk for the sale of two tracts of land (the Properties). On appeal, Eastwood argues the circuit court erred in granting partial summary judgment because (1) Eastwood had not completed essential discovery; (2) multiple writings taken together satisfied the Statute of Frauds; (3) Eastwood's partial performance of the contract removed the unwritten contract from the Statute of Frauds; and (4) a genuine issue of material fact existed as to whether Eastwood and Greenhawk were in a joint venture. We affirm.

1. We hold the circuit court did not err in granting Greenhawk summary judgment because Eastwood failed to present evidence that created a genuine issue of material fact that the parties had a meeting of the mind as to the essential elements of a contract. *See Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) ("Rule 56(c) of the South Carolina Rules of Civil Procedure provides that the moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting Rule 56(c), SCRCP)); *id.* at 463, 892 S.E.2d at 301 ("[T]he 'mere scintilla' standard does not apply under Rule 56(c)."); *id.* ("Rather, the proper standard is the 'genuine issue of material fact' standard set forth in the text of the Rule."); *Weston v. Kim's Dollar Store*, 399 S.C. 303, 308, 731 S.E.2d 864, 866 (2012) ("In determining whether summary judgment is proper, the court must construe all

ambiguities, conclusions, and inferences arising from the evidence against the moving party." (quoting *Byers v. Westinghouse Elec. Corp.*, 310 S.C. 5, 7, 425 S.E.2d 23, 24 (1992))); *Kitchen Planners*, 440 S.C. at 463, 892 S.E.2d at 301 ("[I]t is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013))); *Patricia Grand Hotel, LLC v. MacGuire Enters.*, 372 S.C. 634, 638, 643 S.E.2d 692, 694 (Ct. App. 2007) ("South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." (quoting *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989))); *Consignment Sales, LLC v. Tucker Oil Co.*, 391 S.C. 266, 271, 705 S.E.2d 73, 76 (Ct. App. 2010) ("Terms such as price, time, and place are indispensable to a binding contract and must be set out with reasonable certainty."); *id.* ("Where a contract fails to fix a price, there must be a definite method for ascertaining it."); *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331 S.C. 385, 390, 503 S.E.2d 184, 187 (Ct. App. 1998) ("The requirement of certainty in contracts ensures that the parties intend to conclude a binding agreement and provides the court a reasonably certain basis for granting a remedy.").

Here, the parties never had a meeting of the minds as to the essential terms of a contract—the price, takedown schedule, and deposits—for Eastwood to buy the Properties from Greenhawk. Eastwood's documents, emails, and the testimony of its employees Joe Dority and Joe Polite show Eastwood did not have a contract with Greenhawk. Furthermore, we disagree with Eastwood's assertion that the pro formas Greenhawk sent Eastwood established a formula for the price of the lots on the Properties as costs plus 20% internal rate of return (IRR). First, a pro forma is not an agreement; as Polite explained, a pro forma is a projection and estimate of cost. When asked if the pro forma constituted an offer from Greenhawk to sell lots to Eastwood, Polite answered it was a "discussion." Craig Briner, who was Greenhawk's President, stated Greenhawk prepared the pro formas as part of its negotiations with Eastwood. Next, the pro formas did not set a definite 20% IRR. Further, Briner explained the IRR was determined by a combination of the price and the takedown schedule. The IRR could be increased by increasing the sales price or shortening the time frame for purchase of the lots. We further disagree with Eastwood's contention that the lack of a specified takedown schedule was not fatal to the existence of a contract because time is an indispensable term. *See Consignment Sales, LLC*, 391 S.C. at 271, 705 S.E.2d at 76 ("Terms such as price, *time*, and place are indispensable to a binding contract and must be set out with reasonable certainty." (emphasis added)). Moreover, Eastwood's representative

Polite acknowledged the essential terms of a contract between a developer and builder are the takedown schedule, price, and deposit. We find the evidence does not create a genuine issue of material fact as to whether the parties reached an agreement on the essential terms of contracts for the sale of the Properties. Accordingly, we affirm the circuit court's finding that the parties did not have an enforceable contract, written or otherwise. We, therefore, do not need to address Eastwood's arguments concerning the Statute of Frauds. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not address issues when its determination of a prior issue is dispositive of those remaining issues).

2. Eastwood argues there was a genuine dispute of material fact as to whether Eastwood and Greenhawk were joint venturers. We disagree. *See Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, 147, 425 S.E.2d 764, 774 (Ct. App. 1992) ("A joint enterprise exists where there are two or more persons united in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means and the agencies employed to execute such common purpose."); *id.* ("Further, in order to constitute a joint enterprise, there must be a common purpose and community of interest in the object of the enterprise and an equal right to direct and control the conduct of each other with respect thereto."); *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 238, 391 S.E.2d 538, 543 (1989) ("Relations among joint venturers are governed by partnership law."); *Wellington v. Crosland*, 129 S.C. 127, 141, 123 S.E. 776, 781 (1924) ("Practically the only difference between a 'joint adventure' and a 'partnership' is that a partnership is ordinarily for the transaction of a general business of a particular kind, while a joint adventure relates to a single transaction."); *Kuznik v. Bees Ferry Assoc.*, 342 S.C. 579, 597-98, 538 S.E.2d 15, 24-25 (Ct. App. 2000) (recognizing joint venturers, like partners, owe each other the highest level of fiduciary duty); S.C. Code Ann. § 33-41-510(1) (2006) (providing that each partner must share equally in the profits and losses unless there is a contrary agreement between the partners).

Polite claimed a partnership formed in 2014 for the parties to prepare the Properties for sale of individual lots. However, there is no evidence in the record that the parties' relationship rose to that of a joint venture or partnership. Eastwood did not assert the parties owed each other fiduciary duties or that they had an equal right to direct and control each other's conduct. Polite also stated, "We were not anticipating sharing the profit with Greenhawk. We were going to make sure they made a profit on their investment." In addition, the assignment agreement for one of the Properties required Greenhawk to reimburse Eastwood for the earnest

money and funds Eastwood had expended on the properties, and Eastwood requested this reimbursement from Greenhawk as early as October 2016. Thus, Eastwood was not willing to share the profits or losses of the final project. We hold the evidence shows there is no genuine issue of material fact as to whether the parties agreed to a joint venture.

3. Eastwood argues the circuit court erred in granting summary judgment because discovery was incomplete. We disagree. *See Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003) ("Summary judgment is a drastic remedy and must not be granted until the opposing party has had a full and fair opportunity to complete discovery."); *id.* ("Nonetheless, the nonmoving party must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is 'not merely engaged in a "fishing expedition."'" (quoting *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 544 (1991))); *Guinan v. Tenet Healthsystems of Hilton Head, Inc.*, 383 S.C. 48, 54-55, 677 S.E.2d 32, 36 (Ct. App. 2009) ("A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case, and why further discovery would uncover additional relevant evidence and create a genuine issue of material fact."). Eastwood contends it did not have the opportunity to depose Sajjan Agarwal, who was Greenhawk's "final decision maker, financial backer, and leader."[1] Eastwood brought this action in July 2020, and the hearing did not take place until December 2021; it did not advance a good reason why it could not schedule Agarwal's deposition during that intervening year and a half. Furthermore, Eastwood did not demonstrate further discovery would uncover additional, relevant evidence that would create a genuine issue of material fact. The circuit court based its granting of summary judgment on the lack of an agreement between the parties on the essential terms of a contract for the sale of the Properties, which the admissions from Eastwood's *own* representatives, emails, and documents evidenced. As stated above, we agree that there is no genuine issue of material fact as to whether Eastwood and Greenhawk reached a meeting of the minds as to the essential terms of the contract. Thus, we find no premature grant of summary judgment by the circuit court.

---

[1] Sajjan Agarwal was the chairman/president and primary decision maker of Greenhawk in 2013-14. Briner had to get his approval before buying land, and the capital came from Agarwal family businesses.

**AFFIRMED.**

**THOMAS, MCDONALD, and VERDIN, JJ., concur.**